# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

Case No. **07-80528** **CIV-MARRA**

**MAGISTRATE JUDGE**
**JOHNSON**



ROY DIXON

        Plaintiff,

Vs.

PALM BEACH COUNTY PARKS AND
RECREATION DEPARTMENT

        Defendant.

_____/

## COMPLAINT FOR RACE AND RELIGIOUS DISCRIMINATION IN EMPLOYMENT

Plaintiff Roy Dixon, ("Dixon") makes this complaint against

defendant PALM BEACH COUNTY Parks and Recreation department,

for Race and  Religious discrimination in employment under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-et seq.

## The Parties

1.)     Plaintiff Roy Dixon, (Mr. Dixon"), is an employee of the defendant at the Palm

Beach County Parks and Recreation Department.  A resident of the state of Florida,

residing at 163 Rivera Court, Royal Palm Beach Florida, 33411.

2.)     On information and belief, Palm Beach County Parks and Recreation department is

a government agency of the State of Florida, residing at 2700 Sixth Avenue South, Lake

Worth Florida, 33461.

3.)     This action arises under Title VII of the Civil Rights Act of 1964,

42 U.S.C. §§ 2000e-et seq.

4.)     This Court has jurisdiction over the subject matter of this Complaint pursuant to

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-et seq., to resolve an actual

and justifiable controversy that exists between the parties within the jurisdiction of this

Court. The amount in controversy exceeds $ 75,000.

5.)     This Court may exercise personal jurisdiction over Palm Beach County, based upon

their contacts with this judicial district.

6.)     Venue is proper in this judicial district pursuant to Title VII of the Civil Rights Acts

of 1964, 42 U.S.C. §§ 2000e-et seq.

2

# I. BACKGROUND

7.)     On August 8, 2005, Dixon was hired as a Park Ranger with the Palm Beach County

Parks and Recreation Department.  In October 2005, three months after Dixon was hired

with the County, he joined Spirit & Truth Tabernacle.  After Dixon joined the church, he

requested a religious accommodation from his supervisor and was denied.

Dixon requested from supervisor Todd Moore a schedule change to have Sunday and

Monday off, because his religious belief forbids him from working on his Sabbath.

Sergeant Moore promised ranger Dixon as soon as new rangers were hired, he would get

a schedule change.  Dixon waited five months for the County to hire additional rangers,

but there was a hiring freeze in Human Resources.  On February 28, 2006, Dixon filed a

complaint for race discrimination to Commissioner Greene office about his concerns of

racial discrimination in the Parks and Recreation department.  Commissioner Greene

faxed the complaint to County administrator Robert Weisman office to be investigated by

the FAIR EMPLOYMENT PROGRAM, but for some unknown reason, the complaint

was forward to the County Park and Recreation Department, to be investigated by

manager Cathy Street.

8.)     Manager Street was involved in the discrimination and favoritism in the Park

Rangers section.  Street investigated the complaint and stated the complaint was

unfounded.  On March 26, 2006, Dixon made another request to Sergeant Todd Moore

to have Sundays off, because of the sacredness of his religious beliefs.  Dixon asked

Moore would he change his days off to Sunday and Monday, because he would like to

have the whole Sabbath off to practices his religious beliefs.

Moore informed Dixon that he would speak to manager Cathy Street about the request. On March 27, 2006, at 7:29 AM., Moore sent Dixon an e-mail stating, "Roy I spoke to Cathy about your request to change days off." She requests that you send her an e-mail detailing your reasons for the request." On the same day at 10:43 AM., Street sent Moore an e-mail requesting information about his discussion with Ranger Dixon concerning his schedule.

9.)  On March 29, 2006, at 3:15 PM., Dixon sent Street an e-mail detailing his reasons for the request to have Sundays off.  On March 30, 2006, at 11:01 AM., Street forwarded Dixon's request for a religious accommodation to assistant director Eric Call.  Street stated, "Please review the e-mail from Roy Dixon."  "Also, as Roy works 3-11 (Sundays included), we do not need to make any accommodation for his religious observance."  "Weekends are our busiest time and his current shift allows him significant time to observe his faith."  Assistant director Eric Call agreed with manager Street in denying Dixon's request for a religious accommodation.  Mr. Call stated, "it also seems reasonable that every faith, that I'm aware of, could be accommodated by not having to begin work until 3:00 PM." Mr. Call chose to make the wrong legal decision in denying Dixon's request.

10.)  On the same day at 2:42 PM., Street sent Dixon an e-mail informing him to come to her office immediately after his briefing on Wednesday, April 5, 2006, to discuss his discrimination complaint and his request for a schedule change.  On April 5, 2006, at 3:29 PM., after Dixon's meeting with Street.  Street sent Dixon an email denying his request for a religious accommodation and a schedule change.

On information and belief, Street denied Dixon's request because of retaliation, due to his discrimination complaint that he filed to commissioner Greene office. Street stated with malice and bad faith, "You and I discussed your request to have Sundays off." As discussed, ("and said with arrogances") you will continue to work Sunday, as you are currently scheduled." "Beginning your work day at 3:00 PM., affords you the opportunity to observe religious time with your family." "Again, when new staff is brought on board, I will look at the schedule in terms of operational effectiveness."

11.) Manager Street was fully aware of the County policy on Reasonable Accommodation of Religious Practices. (C-W-P 027)   Park Ranger Mark Merlucci made a prior request for religious accommodation to manager Street a year before Dixon and was granted. On July 7, 2005, at 10:24 AM., Street sent Mark Merlucci an e-mail stating, "Mark I am in receipt of your request for Sundays off. This is the first time that I have been made aware that you would like these days off, based on religious accommodation." I have referred the matter to Human Resources and I will notify you when I hear from them."

12.) On July 14, 2006, at 12:09 PM., Chief Brydon sent an e-mail to all bike Rangers, stating, "With the addition of the three new rangers the bicycle unit should be good to go in a few weeks." The hours for the unit will be 10 AM to 6 PM., Wednesday through Sunday with Monday and Tuesday as your regular schedule days off." Jerry Lunsford will work the same hours with Sunday and Monday off and he will be responsible for maintenance and cleaning of the bicycles on Tuesdays." On July 15, 2006, at 3:27 PM., Dixon responded to Brydon e-mail and stated, "Chief Brydon, I am writing concerning your email you sent to the bike unit.

I notice the bike unit schedule days off will be Monday and Tuesday and the work hours will be 10:00 AM to 6:00 PM. I would like to remain on the bike unit, but the new work hours would not allow me to attend church services. I would like to request for my schedule days off to be change to Sunday and Monday as bike ranger Lunsford. This will give me the opportunity to attend religious services on Sunday with my family. I have already requested for Sunday and Monday off several months ago with manager Cathy Street, and she stated as soon as we get new rangers hired she will consider my request. It will be greatly appreciated by me and my family if you honor my request. I would like to thank you in advance. This was Dixon's third request to his employer for a religious accommodation, but his employer chose to deny his request for the third time.

13.) On July 18, 2006, at 10:35 AM., Street sent an e-mail to assistant director Eric Call requesting about her concerns of a religious accommodation. Street stated, "Ranger Dixon has requested that he be able to observe religious time with his family on Sundays." "I am not sure whether or not this is a request for religious accommodation." Street lied, because she had denied Dixon's request for a religious accommodation twice before. Street was fully aware of Dixon's request for a religious accommodation. The denial of Dixon's third request was done because of retaliation. Sergeant Moore told Dixon that Street said, "that as long as ranger Dixon is hired with the department, he will receive nothing from me." On the same day at 12:11 PM., assistant director Eric Call responded to Street e-mail and stated, "How long has Roy been on a bike? Is this a new schedule? And is it consistent for all Rangers on bikes? Roy mentioned Jerry Lunsford off on Sun/Mon. Is that true?" Call knew that it was discrimination to keep Jerry Lunsford a white ranger on the bike unit with Sundays off, and deny Dixon Sundays off.

14.)    On the same day at 12:18 PM., Street responded to Call e-mail and stated, "Roy has been with the bike unit since its inception. This is a different schedule for the bike unit rangers. With three new Rangers starting in the field, we can now place the bike unit in the parks when we most need them, hence the change to the schedule. Jerry is given different days off so that he can perform the weekly maintenance on the bikes after they have been ridden Wednesday through Sunday. This is both an operational and safety concern. Thank you for your input. I will have Tom make the change in Roy's schedule.

15.)    On the same day at 12:22 PM., Street sent an e-mail to Brydon informing him to remove Dixon from off of the bike unit. Street stated "Hi Tom, Per Eric, please inform Roy Dixon that he will continue to work his regular schedule as a Park Ranger. Due to Roy's request to observe Sunday religious time with his family. Please remove him from the bike unit and have him perform the regular duties of a Park Ranger." Dixon employer chose to retaliate against him by removing him off the bike unit. It would have not caused an undue hardship if Dixon's employer would have accommodated him, because (4) four white rangers was already accommodated Sundays off.

16.)    On July 19, 2006, at 9:22 AM., Street sent an e-mail to Brydon stating, "Tom, I spoke with Eric this morning as to whether or not we needed to run Roy's request for a schedule change (from the 10-6 hours the bike unit will move to) by Karen Thompson in Fair Employment Practices. Eric stated that, since Roy's hours were currently 3-11 and he has requested not to work Sunday mornings so that he can observe the religious time with his family, we can simply keep him on his regular shift and remove him from the bike unit.

" Eric stated that since the bike unit was voluntary, is not a promotional opportunity and does not mean higher pay that we can keep Roy on his current shift as a "regular" park ranger. As Chief, you have the authority to place people on and to remove people from the bike unit. As always, you have the authority to change schedules as you see fit. I am in support of you placing the bike unit rangers in our larger parks when they are the most heavily visited. Please go ahead and draft an e-mail to Roy about our decision. Please make sure that Roy has enough ranger uniforms to be able to resume his regular duties as a ranger." Manager Street knew it was discrimination to change Dixon's schedule from 10 AM. to 6 PM., back to 3-11 PM. That's the reason she wanted to check with the Fair Employment Program in the County's Human Resources office.

17.)    On July 19, 2006, at 9:31 AM, Street sent Brydon an e-mail stating, "Hi Tom, it is my understanding that the bike unit will soon begin operating on Wednesday through Sunday from 10:00-6:00, thereby placing these rangers in the parks when the parks are the busiest. It is also my understanding that Jerry Lunsford, the senior member of the bike unit, has been trained in the maintenance of the bikes and will conduct routine maintenance on the bikes on Tuesdays, thereby keeping all the bikes safe and operational for the Wednesday through Sunday schedule." Upon information and belief, Street wanted to keep Lunsford on the bike unit with Sundays off, but at 10:08 AM., Brydon responded to Street e-mail and stated, "Cathy, you are correct." "Further it is my understanding all bike rangers received training in basic maintenance of bicycles." "I have searched all the personnel files of the bike rangers and have been unable to locate any form signed by them agreeing to a certain amount of time they are required to say on the unit."

18.)    On July 19, 2006, at 9:32 AM., Jerry Lunsford sent Brydon an e-mail stating,

"Tom, per this e-mail and "our conversation today", I respectfully have to decline being

a member of the bike unit. I enjoyed the years I got to ride and thank you for the

opportunity. Manager Street and chief Brydon conspired and informed Lunsford that he

had to resign from the bike unit, because Lunsford had Sundays off and Dixon was

denied and removed from the bike unit. Street and Brydon knew if they did not compel

Lunsford to resign from the bike unit, it will be discrimination to keep a white ranger on

the bike unit with Sundays off, and deny a black ranger the same benefits.

19.)    On July 19, 2006, at 11:02 AM., Street sent Brydon an e-mail stating, "Hi Tom,

since you weren't Chief when the bike unit was created, I wanted to provide a little

history for you. Obviously, the bike unit was created because the ability to patrol areas

where vehicles cannot go is vital in our park system." "This unit allows close contact in a

variety of areas and venues with our patrons." "The one year commitment I referred to

was though of in order to recoup the cost of training and equipment per bike unit

ranger. There was nothing formally put in place about this because we determined

that we could not require this as a physical requirement to be a ranger."

"Rangers volunteer and the Chief has the authority to say yes or no to their being on the

bike unit...the same as the Chief has the authority to place rangers when and where he

determines they are operationally needed (i.e. what areas or zones and what shifts)."

"If it was determined that a ranger was unwilling or unable to perform the required duties

of a bike unit ranger, that ranger could be removed from the unit...again, operational

necessity."

"At the inception of the bike unit, all the volunteers knew that it was being formed to work the large parks, special events and to be in the parks at the busiest hours...a goal we have continued to pursue." "If Rangers no longer want to be on the bike unit, it is your call as to whether you keep them on it or not. Should you choose to remove them from the bike unit, they go back to regular duties in areas and on shifts where you need them the most. As we've discussed, you have the authority to schedule your staff."

20.)    On July 19, 2006, at 11:37AM., Street sent Brydon an e-mail stating, "Tom, as discussed, please let Jerry know that he will be removed from the bike unit and will perform the regular duties of a park ranger when and where you feel he can best be utilized." Subsequently As stated in the facts in paragraph 14, 15, 16, 17 and 19, Street compelled Lunsford to resign.  Street and Brydon conspired to remove Lunsford from the bike unit, because they had already planned to removed Dixon off the unit and assigned him back to the night shift.  Dixon employer knew it was discrimination to remove him off the bike unit and allow Lunsford to stay on the bike unit with Sundays off.  So, Street compelled Lunsford to resign off the bike unit because he had Sundays off.

21.)    On July 20, 2006, at 10:19 AM., Brydon sent Street an e-mail stating, "This is the email I will be sending to Roy.  Per your request you will no longer be assigned to the bicycle unit and will resume your normal ranger duties.  On July 20, 2006, at 10:22 AM., Street responded to Brydon e-mail stating. "Excellent, Tom... do you think you should put an effective date in the e-mail?  Tom responded at 10:29 AM., and stated, "What about the 29th?  This is when Schubart and Montalbano start their 10-6.  I will also advise Jerry of an end date.

Street responded at 10:34 AM., and stated, "Sounds like an operational sound plan to me…good thinking. Wow! That was blatant race discrimination to conspire that plan.

22.) On July 20, 2006, at 11:56 AM., Brydon sent Lunsford an e-mail stating, "Jerry, Per your request, you will no longer be assigned to the bicycle unit and will resume your normal ranger duties effective 7/29/06. At 11:57 AM., Brydon sent Dixon the same e-mail stating, "Roy, Per your request, you will no longer be assigned to the bicycle unit and will resume your normal ranger duties effective 7/29/06."Dixon did not request to be remove from the bike unit, as stated in paragraph 12. Dixon employer removed him off the bike unit because of retaliation, due to Dixon's race discrimination complaint filed to Commissioner Greene office.

23.) On September 27, 2006, at 10:57 PM., Dixon sent his supervisors an e-mail informing them that he have commence a litigation against them for race and religious discrimination in employment. Dixon advised his employer that he reserve his rights to practices his religious beliefs on his Sabbath under the Free Exercise Clause of the First Amendment. Dixon informed his employer that he will no longer be compelled to work on his Sabbath, starting October 1, 2006, but his employer still refused to accommodate his religious beliefs.

24.) On October 1, 2006, Dixon called in to work and told his supervisor Ralph Hendrickson he was talking that day off for religious reasons. On October 2, 2006, Dixon filed suit in the United States District Court Southern District of Florida. On October 5, 2006, at 3:38 PM., Per Chief Brydon, Dixon sent an e-mail informing him why he called in for religious reasons.

On the same day at 4:29 PM., Brydon sent Hendrickson an e-mail requesting information on Dixon's conversation with him when he called in for religious reasons. Brydon stated, "Don, I directed you to send me an e-mail outlining the statements made by Ranger Dixon on October 1, 2006. When he called in and stated he would be taking leave that day due to religious reasons. Please send me an e-mail outlining your conversation by 2300 hours today." I also directed you to speak with Ranger Dixon today and ask him the reason for filling out the leave without pay form." "Please send me an e-mail outlining your discussion with Ranger Dixon by 2300 hours today."

25.)    On October 5, 2006, at 8:38 PM., Hendrickson responded to Brydon e-mail and stated, "Tom, You did not direct me to do anything. You brought in Ranger Dixon's leave request and ask me what did he mean by Religious reasons. I advised you that I would ask Ranger Dixon to clarify the religious reason for the leave. I asked him to send you an e-mail explaining what he meant by leave for religious reasons. Since no one had him sign the leave request that he had requested leave for religious reasons, I asked him to sign the leave slip as he had taken leave on Sunday October 1, 2006. His absence had to be accounted for and it appeared to be leave without pay, under other. I then gave you the signed leave request because you gave it to me unsigned." "When I handed you the leave request, I advised you that he was sending you an e-mail explaining his leave request based on religious reasons. You said okay. Now that you have directed me per this e-mail to outline statements made by Ranger Dixon on October 1, 2006, and October 5, 2006, prior to 2300 hours."

The statements are as listed: "October 1, 2006, Ranger Dixon called in just prior to briefing and roll call stating he was taking that day off for religious reasons and said "Thanks Sarge" and hung up. October 5, 2006, Per your request, I advised him that you wanted to know what Ranger Dixon meant by leave for religious reasons. Ranger Dixon stated that he had already sent you an e-mail prior to talking the leave based on religious reasons. He than stated he would send you another e-mail after roll call, which he did. I asked Ranger Dixon if he wanted to take sick leave or vacation to cover his absence on October 1, 2006, he stated no, he would sign the leave request under the category of leave without pay, other, and list Religious Reasons. That was it and he proceeded to prepare an e-mail as requested."

26.) On October 5, 2006, at 10:38 AM, Cathy Street sent Karen Thompson, the County Human Resources manager an e-mail starting, "Hi Karen, I received your voice mail message. I have the Ranger secretary beginning to copy the Ranger schedules from the inception of the program. Last December, your office requested the schedules from December 1, 2004, through December 16, 2005. If you still have copies of schedules from that time period, please let me know, as it will lessen the amount of copying and time needed to get you the schedules you've requested. Our process for dealing with a request for religious accommodation is to follow county policy # CW- P- 027."

The only formal request for a religious accommodation came from Ranger Merlucci and your office was consulted as to how to proceed. You mentioned in your voice mail that there is "some specific information" that you can tell me about. If there is additional information that you need, please let me know. Is this a second inquiry concerning William Stewart or a continuation of the first one?"

27.)    Manager Street lied to Karen Thompson when she stated the only formal request for religious accommodation was made by ranger Mark Merlucci. Ranger Bill Steward and Dixon made several requests for a religious accommodation and was denied. The County Park and Recreation Department has a pattern of race and religious discrimination. Manager Cathy Street had knowledge of the County religious accommodation policy as stated in paragraph 26, but failed to follow County policy when Dixon requested for a religious accommodation. She chose to discriminated and retaliate against ranger Dixon because of his race discrimination complaint that was filed to Commissioner Greene office.

28.)    Dixon employer continued to discriminate against him even after he filed a law suit on October 2, 2006. Ranger Dixon called in to work on October 1, and October 8, 2006, and stated he will not be reporting to work on his Sabbath for religious reasons. After the second time Dixon called out to work without pay, his employer was compelled to accommodate his religious beliefs, because Dixon refused to report to work on his Sabbath. Dixon's employer knew that they could not fire him for refusing to report to work on his Sabbath, so they had no choice but to accommodate his religious beliefs.

29.)    On October 17, 2006, at 11:00 PM., ranger Dixon requested a shift change to day shift from chief Brydon, because he was promised as soon as the night shift get up to staff, he would be allowed to transfer to day shift. On October 18, 2006, at 7:57 AM., manager Street responded to Dixon shift change e-mail and stated, "Roy, as you know, your schedule has been change to reflect your desire to have all day Sunday off.

This change was made because of information we received from you on September 27, 2006, indicating that you needed the entire day off to observe your religious faith and spend time with your family.  Prior to this notification, you had indicated to me that moving you back to your original schedule on Sundays would afford you the opportunity to attend religious services with your family.  We made the recent change to your schedule only after we were notified that you needed the entire day off for religious accommodation."

30.)     Manager Street chose once again to discriminate against ranger Dixon by refusing his request for a shift change to day shift.  Street did not address Dixon subject matter reference shift change, instead she diverted Dixon's request from a change to day shift to being accommodated  Sunday off.  Street stated, "This change was made because of information we received from you on September 27, 2006, indicating that you needed the entire day off to observe your religious faith and spend time with your family."  Street wanted to mislead and misdirect her attorney Andrew McMahon who she CC: at the bottom of the e-mail, by misconstruing the facts, because Dixon had already filed a law suit.  Subsequently to paragraph 23, 24, 25, and 28, Dixon employer refused to accommodate his religious beliefs even after Dixon had filed a law suit.  Dixon still had to call out to work twice for religious reasons after the law suit was filed.

Street also stated, "Prior to this notification, you had indicated to me that moving you back to your original schedule on **Sundays** would afford you the opportunity to attend religious services with your family.  Ranger Dixon never had Sundays off originally, Street lied again.

31.)    On October 19, 2006, at 10:17 PM., Dixon sent Chief Brydon an e-mail, stating that his Park keys was missing from off his key ring. Chief Brydon failed to respond to Dixon e-mail. On October 21, 2006, at 10:57 PM., Dixon sent Chief Brydon another e-mail explaining to him that he needed new Park keys, because he could not open the Ranger station and lock any Parks for four days. Dixon stated to Brydon as he traced his thoughts on how the Park keys became mysteriously missing from off his car key ring, without him taking them off himself. Dixon informed Brydon by speculating that Jerry Lunsford could have taken the keys, because he left the computer room last. On October 24, 2006, three days after Dixon's speculation to Brydon, about how his keys became missing; Sergeant Chiappa gave Dixon back his missing keys. Dixon asked him were did he find the keys, and he stated, "I do not want to get involved" "I heard Sergeant Robert Andino found the keys." Dixon asked Sergeant Andino where did he find the keys and he stated, "he did not find the keys, but someone brought the keys to me."

32.)    Dixon employer continued to harass and discriminate against him during his law suit. Dixon continued to request for a transfer to day shift when new rangers was hired, but was denied. Street and Brydon transferred two new white rangers to day shift without seniority over Dixon with malice and bad faith. When Dixon sent his employer an e-mail appealing those transfers, they never responded.

33.)    On November 1, 2006, at 3:30 PM., assistant director Eric Call and manager Cathy Street, had a meeting with Dixon and his union representative Mark Merlucci. Eric Call showed Mark and Dixon, an e-mail that he had sent to Chief Brydon dated 10/21/2006, reference to missing keys. Director Call stated, "I have informed your supervisors not to respond to your e-mails because they are arrogant."

16

This meeting was to intimidate and to harass Dixon.  Dixon sent his employer attorney Andrew McMahon an e-mail of the intimidation meeting with assistant director Eric Call and Cathy Street.  Dixon also CC: and forwarded the Commissioners the intimidation and shift change e-mails.  Commissioner Greene was the only one that responded to Dixon's e-mails of discrimination.  Commissioner Greene sent Dixon an e-mail on November 1, 2006, Reference: meeting with Eric Call and Cathy Street.  Commissioner Greene informed Dixon that the intimidation meeting e-mail was filed.

34.)    Due to the discrimination and harassment by Dixon's employer, he suffered and continues to suffer mental damages.  Dixon had to take FMLA to facilitate his psychological status, because his employer continued to harass and intimidate him and his witnesses with witness tampering.  Dixon's Doctor had to prescribe him medication to help him deal with his psychological behavior.  Dixon had to be treated by Doctor Rathjens for psychotherapy because he was having thoughts about hurting his employers who was harassing and discriminating against him.

35.)    On  January 26, 2007, Dixon's law suit was dismissed by Judge Zloch for failure to produce a right to sue letter from the Equal Employment Opportunity Commission. Judge Zloch waited four months for Dixon to produce the letter before he decided to dismiss his case.  Dixon filed an EEOC complaint on August 15, 2006, to the Miami district office, but his investigator failed to investigate his discrimination complaint within the 180 days time period. Dixon called Lozano after Judge Zloch dismissed his case requesting for a right to sue letter, because he wanted to file a motion for reconsideration to the district court, but Lozano refused to issue Dixon a right to sue letter.

Judge Zloch quoted, while the condition precedent of a right –to –sue letter can be equitably modified, the cases that have permitted an equitable modification of the statute's requirements are distinguishable from the instant facts. See Black v. Brown Univ., 55 F. Supp. 880 (D.C. RI 1983) (permitting quitable relief when complainant was misled by EEOC) ; See Kahn v. Pepsi Cola Bottling Group , 526 F. Supp. 1268, 1270 (D.C N.Y. 1981) ("[F]ailure to receive a right to sue letter is not fatal when the plaintiff has requested one, and through no fault of his own the EEOC refuses to issue it.") Dixon believes there was some conspiracy with his investigator Ines Lozano and the County, because Dixon made several calls to her within the first three months after he filed the complaint, but she never returned his phone calls.  After Judge Zloch dismissed his case, she refused to give him a right to sue letter.

## CONCLUSION

Dixon has established facts of his burden of proof that the County did in fact discriminated against him.  This legal burden has shifted to the County. The County will not be able to prove that any difference in treatment was not due in anyway to discriminate.

## COUNT 1
## RACE DISCRIMINATION

Dixon incorporates and re-alleges paragraph 1- 30 as set forth at length herein.

36.) Dixon employer actions were both intentional and negligent, for assigning Dixon back to the night shift.

37.) Dixon employer actions constituted disparate treatment by denying his request for a religious accommodation.

38.) The proffered reason for the removable of Dixon from off the bike unit, was merely a pretext for the defendant's acts.

39.) Before a material change in its position, as set forth in paragraph 13-16, Cathy Street, Eric Call and Thomas Brydon knew or had reason to know their actions comprised unlawful intentional race discrimination.

40.) Cathy Street, Eric Call and Thomas Brydon should have known that the removable of Dixon from off the bike unit and day shift, was a pretext for racial employment discrimination.

41.) Dixon employer should have known or had reason to know their actions comprised unlawful intentional discrimination for the removable of Dixon off the bike unit, because Dixon was qualified for the bike ranger position.

42.) Dixon, suffered and continues to suffer mental damages as a result of his employer unlawful intentional discrimination.

WHEREFORE, Plaintiff Dixon respectfully prays that this Court enter judgment against Defendant Palm Beach County.

(a)     award Dixon compensatory damages;

(b)     award Dixon punitive damages;

(c)     tax the cost of this action to Palm Beach County

(d)     award such further relief as this Court may deem just and appropriate.

## COUNT 2
## RELIGIOUS DISCRIMINATION

Dixon repeats and re-alleges paragraph 9-11 as set forth at length herein.

43.)     Dixon's employer was negligent and should have known being in their position, that their actions was merely a pretext for religious discrimination for not accommodating Dixon's religious beliefs.

44.)     Dixon employer was negligent and should have known being in their position, that it is an unlawful employment practice for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of their employees.

45.)     Dixon employer was negligent because they failed to accommodate his Sabbath off, because Dixon held a bona fide religious belief conflicting with his employment requirement.

46.)     Subsequent to paragraph 15-16, to Dixon's third request for a religious accommodation his employer was negligent because they continued to deny him a reasonable accommodation after he informed them of his religious beliefs.

47.)     Dixon employer was negligent because they disciplined him for failure to comply with the conflicting employment requirement.

48.)    Dixon employer was negligent because they compelled him to work on his

Sabbath after he requested a religious accommodation.

WHEREFORE, Plaintiff Dixon respectfully prays that this Court

enter judgment against Defendant Palm Beach County.

(a)    award Dixon compensatory damages;

(b)    award Dixon punitive damages;

(c)    tax the cost of this action to Palm Beach County

(d)    award such further relief as this Court may deem just and appropriate.

## COUNT 3
## RETALIATION

49.)    Dixon employer knew or had reason to know their actions comprised

retaliation for the removable of Dixon off the bike unit.

50.)    Dixon employer should have known that the removable of Dixon from off the bike

unit and day shift, was a pretext for racial employment discrimination.

51.)    The proffered reason for the removable of Dixon from off the bike unit, was merely

a pretext for racial discrimination and retaliation.

52.)    Dixon employer actions were both intentional and negligent, for retaliating against

him by removing him from off the bike unit and day shift.

53.)    Dixon employer were negligent when they discipline him, by removing him off

the bike unit and assigned him back to the night shift.

WHEREFORE, Plaintiff Dixon respectfully prays that this Court

enter judgment against

Defendant Palm Beach County.

(a)    award Dixon compensatory damages;

(b)    award Dixon punitive damages;

(c)    tax the cost of this action to Palm Beach County;

(d)    award such further relief as this Court may deem just and appropriate.

## **JURY DEMAND**

Plaintiff Dixon demands a trial by jury as to all issues so triable.

Respectfully submitted,

Roy J. Dixon Pro Se.
163 Rivera court
Royal Palm Beach Fl., 33411
Home Phone (561) 798-9786
Cellular (561) 385-9443
Fax (561) 204-1907

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was

served in person on this _____, Day of June, 2007, upon:

PALM BEACH COUNTY PARKS
AND RECREATION DEPARTMENT
2700 Sixth Avenue South
Lake Worth, Florida 33461
Phone (561) 966-6600
Fax (561) 966-6624

22

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**I. (a) PLAINTIFFS**

Roy Dixon  CIV-MARRA

**DEFENDANTS**

Palm Beach County

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES) MAGISTRATE JUDGE JOHNSON

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Roy Dixon   07-80528
163 Riviera Court
Royal Palm Beach FL 33411

Attorneys (If Known)  Andrew J. McMahon
Post office Box 8495

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☑ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  ☐ HIGHLANDS

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)  and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

9:07CV 80528-KAM Johnson

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☑ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**
(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO     b) Related Cases ☐ YES ☐ NO

JUDGE _____     DOCKET NUMBER _____

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

Civil Rights Act of 1964, 42 USC.

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VIII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ exceeds $75,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
Roy Dixon PRO Se

DATE  06/15/07

**FOR OFFICE USE ONLY**

AMOUNT 350 00     RECEIPT # 540284     IFP