UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80528-CIV-ZLOCH

ROY DIXON,

        Plaintiff,

vs.                                                    **O R D E R**

PALM BEACH COUNTY PARKS AND
RECREATION DEPARTMENT,

        Defendant.
_____/

    THIS MATTER is before the Court upon Defendant Palm Beach County Parks and Recreation Department's Motion For Summary Judgment (DE 49).  The Court has carefully reviewed said Motion and the entire court file and is otherwise fully advised in the premises.

    Plaintiff Roy Dixon initiated the above-styled cause with the filing of his Complaint (DE 1) on June 18, 2007.  Plaintiff alleges claims for discrimination and retaliation on the basis of race and religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (2006) (hereinafter "Title VII").  In the instant Motion (DE 49), Defendant argues that Plaintiff suffered no adverse employment action, that Defendant had legitimate, non-discriminatory reasons for all actions taken with respect to Plaintiff, and that Plaintiff cannot establish that Defendant's reasons are pretext.  For the reasons more fully expressed below, the Court finds that Plaintiff has not suffered discrimination or

retaliation.  Therefore, the Court shall enter summary judgment for
Defendant.

## I.  Background

Plaintiff Roy Dixon is employed by Defendant Palm Beach County
Parks and Recreation Department as a park ranger for the Security
Division of the parks.[1]  Plaintiff is an African American male who
was hired on August 8, 2005, and is supervised by Tom Brydon, John
Utley, Todd Moore, and Robert Andino.   The following timeline
details the facts critical to the instant Motion.

After being hired in August, Plaintiff spent two weeks in
training.  Thereafter, he began patrolling parks with an assigned
vehicle and worked Wednesday through Sunday on the night shift from
3 p.m. until 11:00 p.m.  See DE 49-3, p. 84, ln. 9-12 (hereinafter
"Dixon Dep.").  In November of 2005, Defendant added a bicycle
patrol, and Plaintiff was assigned to it.  Initially, the bicycle
patrol was comprised of only four rangers, including Plaintiff.
There was a morning shift from 7:00 a.m. until 3:00 p.m. and a
night shift from 3:00 p.m. until 11:00 p.m.  Plaintiff worked the
night shift.

On February 27, 2006, Plaintiff sent a letter to Commissioner
Greene complaining that his supervisor Brydon 1) was a racist and
referred to Dixon as "boy," 2) made a sarcastic remark when
Plaintiff informed him that he was a Christian, 3) told the new

---

[1]  Unless otherwise noted, these facts are taken from
Plaintiff's Statement Of Material Facts (DE 50) and are undisputed.

supervisor Andino to be hard on Plaintiff, and 4) disciplined Plaintiff for missing a meeting while two white rangers also missed the meeting without being disciplined.

The Parties dispute when Plaintiff first made a request for a religious accommodation to have Sundays off entirely. Plaintiff asserts that his first request was made on March 29, 2006. Dixon Dep., pp. 170-71. Defendant asserts that the first request was not made until September 27, 2006, when Plaintiff sent a letter stating, "I will no longer be compelled to work on my Sabbath starting October 1, 2006." Dixon Dep., p. 170, ln. 2-11.

Plaintiff claims that on April 5, 2006, he received an email from Kathy Street denying his request to have Sundays off. No further requests were made until July. On July 14, 2006, the bicycle patrol schedule changed such that all rangers on that patrol were required to work from 10:00 a.m. until 6:00 p.m. For Plaintiff this meant he would be required to work Wednesday through Sunday from 10:00 a.m. until 6:00 p.m. On July 15, 2006, Plaintiff told Brydon that the new shift would prevent him from attending church, and he asked for the entire day off. Otherwise, Plaintiff requested to remain on the bike patrol and the day shift. See DE 52, ¶ 27.

On July 20, 2006, Plaintiff was transferred from the bicycle patrol back to the vehicle patrol, and his schedule returned to what it had been previously, Wednesday through Sunday from 3:00 p.m. until 11:00 p.m. This allowed Plaintiff to attend church

services in the morning.  Upon being transferred, Plaintiff received the same pay, he retained the same title, and his duties remained essentially the same.  Also, he continued to receive the same privileges and benefits as before the transfer.

On September 27, 2006, Plaintiff sent a letter stating, "I will no longer be compelled to work on my Sabbath starting October 1, 2006."  The following Sunday, October 1, 2006, Plaintiff called in and said that he was taking the day off for religious reasons.  On Sunday, October 8, 2006, he did the same.  Because Plaintiff had no vacation time remaining, he received leave without pay.  Thereafter, on October 15, 2006, Defendant modified Plaintiff's schedule to give him Sundays off, and it did not discipline Plaintiff for taking those days off.  At the time, Plaintiff also requested to be placed on the 10:00 a.m. to 6:00 p.m. shift, but that request was not granted.  Thereafter, Plaintiff filed the instant action alleging discrimination and retaliation.  His Complaint is limited to allegations of discrimination and retaliation because he was denied Sundays off and transferred from the bicycle patrol to the vehicle patrol.  The Complaint does not raise any claims regarding racial slurs or other offensive and discriminatory conduct.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate

if the pleadings, the discovery and disclosure materials

4

> on file, and any affidavits show that there is no genuine
> issue as to any material fact and that the movant is
> entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation omitted).  Indeed,

> the moving party bears the initial burden to show the
> district court, by reference to materials on file, that
> there are no genuine issues of material fact that should
> be decided at trial.  Only when that burden has been met
> does the burden shift to the non-moving party to
> demonstrate that there is indeed a material issue of fact
> that precludes summary judgment.

Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving party has the burden of proof.  Celotex Corp., 477 U.S. at 322; Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987).  Further, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

III. <u>Discrimination Under Title VII</u>

Plaintiff's claims of discrimination are based on indirect evidence.   The disposition of indirect evidence employment discrimination cases arising under Title VII is governed by the burden shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).   Under this regime, Plaintiff must establish a prima facie case of discrimination.   If Plaintiff succeeds in this, Defendant bears a burden of production to articulate legitimate, non-discriminatory reasons for its actions against Plaintiff.   Plaintiff must then carry the ultimate burden of persuasion by establishing that Defendant's articulated reasons are pretext and undeserving of credibility.   <u>Id.</u>

Under the <u>McDonnell Douglas</u> analysis, to establish a prima facie case of discrimination Plaintiff must show that 1) he was a member of a protected class, 2) he was qualified for the position at issue, 3) he suffered an adverse employment action, and 4) other similarly situated employees outside the class were treated more favorably.   <u>See</u> <u>Rice-Lamar v. City of Ft. Lauderdale, Fla.</u>, 232 F.3d 836, 842-43 (11th Cir. 2000).   In Counts 1 and 2, Plaintiff claims Defendant discriminated against him on the basis of his race and religion by denying his request to have Sundays off to observe a Sabbath and by transferring him from the bicycle patrol on the day shift to the vehicle patrol on the night shift.   Defendant neither disputes that Plaintiff is a member of a protected class, nor does it argue that Plaintiff is unqualified for a position on

the bicycle patrol.  DE 26, p. 6.  Therefore, the only matters at issue are whether Plaintiff suffered an adverse employment action and whether other similarly situated individuals were treated more favorably than he.

Plaintiff's allegations do not constitute an adverse employment action.  "[T]o prove adverse employment action in a case under Title VII's anti-discrimination clause, [Plaintiff] must show a <u>serious and material</u> change in the terms, conditions, or privileges of employment."  <u>Davis v. Town of Lake Park, Fla.</u>, 245 F.3d 1232, 1239 (2001).  This standard would encompass "a significant change in employment status, such as hiring, firing, failing to promote, <u>reassignment with significantly different responsibilities</u>, or a decision causing a significant change in benefits."  <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 760-61 (1998) (emphasis added).

Plaintiff's Complaint alleges that his removal from the bicycle patrol and placement on the night shift constitutes adverse employment action.  Complaint, DE 1, ¶¶ 49-53.  However, the transfer of Plaintiff from the bicycle patrol to the motor vehicle patrol does not constitute a serious and material change in his employment status.  In fact, Plaintiff admitted that "he received the same pay when he was transferred from the bicycle unit, his duties remained essentially the same, and he maintained his same working hours and held the same title."  Defendant's Statement Of Material Facts, DE 50, ¶ 29; Plaintiff's Response DE 52, ¶ 29.

Further, Plaintiff admitted that he received the same privileges and benefits as he received prior to the transfer.  DE 50, ¶ 29; DE 52, ¶ 29.  By Plaintiff's own admission, his transfer from the bicycle patrol to the motor vehicle patrol did not constitute an adverse employment action, and as a matter of law it falls short of what is required in <u>Davis</u>.  245 F.3d at 1239.

Second, Plaintiff's placement on the night shift does not constitute an adverse employment action.  Based on the facts in the record, Plaintiff has always worked the night shift, except during the brief period of his training and one week in July of 2006, when the bicycle patrol shifts were changed.  On July 14, 2006, Brydon informed all bicycle patrol rangers that their new daily schedule would be from 10:00 a.m. until 6:00 p.m.  This meant that instead of working from 3:00 p.m. until 11:00 p.m on Sundays, Plaintiff would be required to work from 10:00 a.m. until 6:00 p.m., thereby impeding his ability to attend church services.

On July 15, 2006, Plaintiff told Brydon about his conflict between his work and his religion and asked for Sundays off completely as previously requested.  Rather than give Plaintiff Sundays off completely, Defendant accommodated Plaintiff by putting him back on the night shift to allow him to attend church in the morning.  To this end, Defendant transferred Plaintiff from the bicycle patrol to the motor vehicle patrol because the bicycle patrol no longer had a night shift.  Defendant's action is not an adverse employment action for two primary reasons.  First, it was

8

an accommodation to enable Plaintiff to freely attend church services as he wanted to do.  Second, Plaintiff did not suffer any materially adverse change in employment.  He had always worked the night shift other than for two very brief periods, and his duties remained essentially the same, as did his pay and benefits.  Thus, the Court finds as a matter of law that Plaintiff has failed to establish a prima facie case because he has not satisfied the third factor under <u>McDonnell Douglas</u>.  <u>Rice-Lamar</u>, 232 F.3d at 842-43.

## IV. <u>Retaliation Under Title VII</u>

In Count 3, Plaintiff claims Defendant retaliated against him after he filed a discrimination complaint by denying his request to have Sundays off and transferring him from the bicycle patrol to the vehicle patrol.  To establish a <u>prima facie</u> case of retaliation, Plaintiff must demonstrate that he participated in a Title VII investigation or opposed an activity made unlawful by Title VII, that she suffered an adverse employment action, and that there was a causal connection between the two.  <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 919 (11th Cir. 1993).

On February 27, 2006, Plaintiff sent a letter to Commissioner Greene complaining that his supervisor Brydon had discriminated against him in multiple ways.  One month later on March 29, 2006, Plaintiff made a request to have Sundays off to "observe a Sabbath," which was denied.[2]  Plaintiff claims this denial was in

_____

[2] The Court assumes, for purposes of this Motion, that Plaintiff made his first request for Sundays off on March 29, 2008.

retaliation for his complaint.  He further claims that his transfer from the bicycle patrol to the vehicle patrol constitutes retaliation.  The Court finds that Plaintiff engaged in an activity protected by Title VII and that a causal connection exists between that activity and Defendant's action.  However, Plaintiff did not suffer an adverse employment action.

The Eleventh Circuit has previously held that Title VII protection does not apply to "everything that makes an employee unhappy."  <u>Davis</u>, 245 F.3d at 1242 (citation omitted).  Instead, conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him of or her of employment opportunities, or adversely affects his or her status as an employee" is adverse employment action.  <u>Gupta v. Fla. Bd. of Regents</u>, 212 F.3d 571, 587 (11th Cir. 2000).  The Supreme Court clarified the test for what would constitute an adverse employment action in the context of retaliation in violation of Title VII in <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006).  Specifically, the Supreme Court held that employers are prohibited from taking "actions [that are] harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination".  <u>Id.</u> at 57.

The denial of Plaintiff's requests to have Sundays off completely does not constitute an adverse employment action.  During the entirety of Plaintiff's employment with Defendant, he has worked on Sundays, except during a brief training period when

10

he started working for Defendant.  Thus, the denial of his request
for Sundays off does not constitute a material change in his
employment.  Rather, the denial maintained the status quo.  While
it may be far from desirable to work on Sunday evenings,
Defendant's denial of Plaintiff's request to have those days off
does not constitute adverse employment action.  Further, Defendant
did not fail to reasonably accommodate Plaintiff.  Defendant
accommodated Plaintiff by putting him on the night shift, thus
allowing him to attend Sunday morning services.

Additionally, the transfer of Plaintiff from the bicycle
patrol to the vehicle patrol does not constitute an action that
would dissuade a reasonable worker from making or supporting a
charge of discrimination.  As discussed above, there was no
material change in Plaintiff's employment status.  He retained the
same pay, benefits, and job responsibilities as before.  Further,
the transfer from the bicycle patrol to the vehicle patrol was an
accommodation to allow Plaintiff to attend church on Sunday
mornings.  Therefore, Plaintiff has failed to establish a prima
facie case for retaliation.

Typically, the Court would analyze in the alternative whether
Defendant had a neutral, non-discriminatory reason for its actions,
and if so whether Plaintiff can rebut the same as pretextual.
However, in this case, the Court finds it unnecessary to engage in
such analysis because it is so clear that the allegations in
Plaintiff's Complaint fall short of an adverse employment action in

both contexts, discrimination and retaliation.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant Palm Beach County Parks and Recreation Department's Motion For Summary Judgment (DE 49) be and the same is hereby **GRANTED**; and

2. Final Judgment will be entered by separate Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this ___26th___ day of January, 2009.


_____
WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

All Counsel of Record

Roy Dixon, pro se
163 Rivera Court
Royal Palm Beach, FL 33411